# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JEFFREY C. WILSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 6:13-643 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Jeffrey C. Wilson ("Wilson") seeks review of an adverse decision on his application for disability-based benefits under the Social Security Act.[1]

## I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither

---

[1]     Wilson applied for disability insurance benefits available under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Disability Insurance benefits provide income to insured individuals forced into involuntary, premature retirement by reason of disability.  *See* 42 U.S.C. § 423(d).

can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order).

## I. Background

Wilson alleges disability commencing on December 4, 2005, due to back pain. (T.13, 291-95). After lengthy administrative proceedings, including an earlier Appeals Council remand to consider effects of obesity,[2] an administrative law judge, Robert Wright ("ALJ Wright") conducted an evidentiary hearing, and denied Wilson's application. (T. 11-20, 28-53). The Appeals Council denied Wilson's request to review. (T. 1-6). Wilson then instituted this proceeding.

## II. Commissioner's Decision[3]

ALJ Wright found that Wilson's severe impairments consist of "lumbar spine impairments and obesity." (T. 13). They reduce Wilson's residual functional capacity for work activities to the light exertional level with a "clean

---

[2]     Wilson's claim was denied initially. (T. 199-121). After requesting an evidentiary hearing, the matter was assigned to administrative law judge, Carl E. Stephan ("ALJ Stephan"), who conducted two hearings, and, thereafter, denied the application. (T. 66-94, 95-118, 126-33). The Appeals Council vacated ALJ Stephan's decision and remanded the matter for a new hearing. (T. 140-41). In its remand order, the Appeals Council directed the administrative law judge to: (1) evaluate the severity and effects of claimant's obesity in accordance with SSR 02-1p; and (2) give further consideration to the claimant's maximum residual functional capacity during the period at issue, further evaluating the nontreating source opinion pursuant to 20 C.F.R. § 404.1527. (T. 140-41). On remand, the matter eventually was reassigned to ALJ Wright, who conducted an evidentiary hearing at which Wilson and a vocational expert, Esperanza DiStefano, M.S., C.R.C., appeared and testified. (T. 11-20, 28-53, 280-85).

[3]     ALJ Wright utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

air" environmental limitation.[4] (T. 15). Based on expert vocational testimony, ALJ Wright found that Wilson can still perform his past relevant work as a desk clerk, assistant manager at a fast food restaurant, and retail sales clerk. (T. 19). Consequently, Wilson was not under a disability at any time from the alleged onset date (December 4, 2005) through the date last insured (June 30, 2011).[5] (T. 20).

## III. Points of Alleged Error

Wilson's brief asks whether ALJ Wright committed reversible error –

1. by failing to apply the treating physician rule and further by failing to re-contact the treating physician;

2. in his credibility determination;

3 by failing to properly assess claimant's obesity; and

4. in failing to properly assess claimant's need for an assistive device in his residual functional capacity evaluation.

(Dkt. No. 10, pp. 1-2). The first point raises two analytically distinct issues that must be examined separately. The last three points, however, as well as the remaining prong of the first point, relate to an issue that will be considered under a single subject-matter heading.

---

[4]    ALJ Wright assessed Wilson's residual functional capacity as follows:

After careful consideration of the entire record, the undersigned finds that, through the date of last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 1567(b) except that the claimant is limited to a clean air environment, which is defined as air free of fumes, dust, and industrial pollutants, such as might be found in an office building or shopping mall.

(T. 15).

[5]    Wilson had sufficient quarters of coverage to remain insured through June 30, 2011. (T. 11).

# IV. Adequacy of Record

As discussed later in greater detail, ALJ Wright gave little weight to medical opinions regarding Wilson's functional limitations expressed by two treating physicians, R. Curtis Mills, M.D., and Clara Shnaidman, M.D.[6] ALJ Wright found their opinions unpersuasive because they were "completely inconsistent" with other medical opinions of record with respect to a sitting limitation, and because they appeared to be based primarily on Wilson's subjective testimony tainted by symptom exaggeration. (T. 18). In finding Dr. Shnaidman's opinion unpersuasive, ALJ Wright articulated additional reasons including lack of aggressive treatment, lack of ongoing treatment by a specialist and lack of treatment records supporting Dr. Shnaidman's opinion.

Wilson argues that instead of discrediting Dr. Shnaidman's opinion for lack of treatment records and diagnostic test results, ALJ Wright should have recontacted Dr. Shnaidman to determine what information she relied upon when expressing her opinions. Wilson cites the Commissioner's regulation stating that additional medical source evidence will be sought when it does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e)(1). Wilson also relies on within-circuit decisions establishing the Commissioner's duty to develop a full administrative record, particularly with respect to treating source opinion.

## A. *Governing Legal Principles*

Claimants possess a right to administrative records adequately developed to the point that fair and informed decisions can be reached thereon. In the

---

[6]     Dr. Mills treated Wilson until his retirement on September 16, 2011. Dr. Shnaidman thereafter assumed Wilson's primary care responsibility. (T. 681).

Social Security context, the concept of an adequate record is *sui generis*. "Social Security disability determinations are investigatory, or inquisitorial, rather than adversarial." *Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009) (internal quotation marks omitted). "It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Id.* (internal quotation marks omitted); *accord Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). Correlative to this duty, administrative law judges must recontact treating physicians or other medical sources, and request additional information when evidence in hand is inadequate to determine whether claimants are disabled. 20 C.F.R. §§ 404.1512(e), 404.1520(c); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (when there is an inadequate medical record, an administrative law judge must *sua sponte* seek additional information).

When further information is necessary, administrative law judges must first recontact treating sources. *See* 20 C.F.R. § 404.1512(e). This is both logical and due to the treating-physician provisions in the regulations.[7] Thus, administrative law judges have an independent duty to make reasonable efforts to obtain reports prepared by claimants' treating physicians in order to afford claimants full and fair hearings. *Devora v. Barnhart*, 205 F. Supp.2d 164, 174 (S.D.N.Y. 2002) (collecting cases).

An administrative law judge's failure to develop the record adequately is an independent ground for vacating the Commissioner's decision. *See Moran,* 569 F.3d at 114-15 ("We vacate not because the ALJ's decision was not supported

---

[7] *See* discussion of "treating physician rule" in Section V.

by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

An affirmative obligation to develop an administrative record does not extend to infinity, however, and is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259 (GLS), 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). Reviewing courts require only *reasonable* efforts to help claimants get medical reports from their own medical sources. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The Commissioner's implementing regulation recognizes that further development of the record is unnecessary, and administrative law judges may make determinations based upon existing evidence when it is consistent and sufficient to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520b(a). Likewise, reviewing courts hold that administrative law judges are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *see also Hart v. Commissioner of Soc. Sec.*, No. 5:07–CV–1270 (DNH), 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

## B.    *Application*

Here, there were no gaps in the record that triggered a duty to recontact treating sources or further develop the record *sua sponte* through other sources. The record contained a complete medical history of Wilson, including over 300 pages of treatment records, Workers' Compensation records, and consultative reports. (T. 460-797). It was adequate to permit ALJ Wright to make a disability determination. Hence, Wilson's claim that ALJ Wright was obligated *sua sponte* to recontact his treating medical sources lacks merit. *See Carvey v. Astrue*, 380 Fed. App'x 50, 52 (2d Cir. 2010) (summary order) (citing *Perez*, 77 F.3d at 47-48).

# V.  Residual Functional Capacity

Wilson's remaining points of error challenge ALJ Wright's finding of "residual functional capacity."[8]  Wilson argues that when assessing residual functional capacity, ALJ Wright did not properly weigh opinions of his treating medical sources, or his subjective self-evaluation, or effects of obesity, or his alleged need for an assistive device.  (Dkt. No. 10, pp. 3-12).

*A.    Weighting of Treating Source Opinions*

Treating physicians Mills and Shnaidman (both identified in Section IV., *supra*) opined that Wilson's impairments cause him to be more severely limited than as determined by ALJ Wright.[9]  Had their opinions been credited, ALJ Wright could not have found that Wilson retains residual functional capacity for

---

[8]    "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain.  *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *2 (July 2, 1996).

[9]    Dr. Mills opined that Wilson could lift/carry only up to ten pounds occasionally, sit for only fifteen minutes at a time, stand for only fifteen minutes at a time, and walk for only thirty minutes at a time.  Further, Dr. Mills opined that Wilson must be able to alternate between positions through an eight-hour workday.  (T. 653-660).  Dr. Mills also limited Wilson to never climbing, balancing, stooping, kneeling, crouching, or crawling, and performing only occasional fine or gross manipulation.  (Id.).

Dr. Shnaidman (who assumed primary care responsibility when Dr. Mills retired) opined that Wilson is limited to sitting, standing, or walking for less than two hours each in an eight-hour workday, and that he can sit for only twenty minutes at a time or stand for fifteen minutes at a time.  (T. 678-79).  She further opined that Wilson can lift less than 20 pounds occasionally and rarely stoop, crouch, or squat, and occasionally twist or climb.  (T. 679).  According to Dr. Shnaidman, Wilson will miss approximately two days of work per month and that his pain will interfere frequently with simple work tasks.  (*Id.*).

work at the light exertional level, because it requires greater capacity to lift, stand, walk and sit than Wilson retains according to these physicians.[10]

Wilson specifically argues that ALJ Wright failed to follow the "treating physician rule." Wilson contends that opinions of treating sources are entitled to controlling or great weight because their treatment relationship "over a span of many years . . . offers unique insight into the abilities and limitations of the claimant." (Dkt. No. 10, p. 6). Further, Wilson argues that it was illogical for ALJ Wright to give greater credence to "a consultative examiner's opinion based on a one time evaluation . . . and further use that one time opinion as a foundation to not award the treating physician controlling weight." *Id.*

## 1.    Governing Legal Principles

Administrative law judges must give controlling weight to opinions of "treating sources"[11] regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2). But, when treating source opinion swims upstream, contradicting other substantial evidence, such as opinions of other medical experts, it may not be entitled to controlling weight. *See Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 643–44 (2d Cir. 2007) (summary order); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.

---

[10]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[11]    *See* 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

2002).  Likewise, a treating physician's opinion may be discounted when it is internally inconsistent.  *See Micheli v. Astrue*, 501 Fed. App'x 26, 28 (2d Cir. 2012) (summary order).

When controlling weight is not afforded to treating source opinion, and also when opinions from other acceptable medical sources are evaluated with respect to severity of impairments and how they affect individuals' ability to function, the degree of weight to be given such evidence is determined by applying certain generic factors prescribed by regulation:  (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how consistent opinion is with record as a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors.  *See* 20 C.F.R. § 404.1527(c).

2.    Application

ALJ Wright's residual functional capacity assessment is supported fully by medical opinions received from acceptable medical sources *other than* treating sources.  These sources consisted of several consultative examining physicians associated with workers' compensation proceedings, social security proceedings, and a non-examining medical consultant.  A synopsis of their principal findings appears in the note below.[12]

---

[12]      *Dr. Edwin Mohler, M.D. (orthopedic surgeon)*

On March 28, 2006, Wilson presented for a Workers' Compensation independent medical examination to Dr. Mohler. (T. 478-484).  Dr. Mohler opined that Wilson had at that time "at most mild partial and temporary" disability, and that Wilson is "capable of working, avoiding highly repetition [*sic*], bending, sustained overhead work, and highly repetitious use of his upper extremities."  (T. 479).

*Dr. John H. Buckner, M.D. (orthopedic surgeon)*

On December 5, 2006, Dr. Buckner performed an independent medical examination for Workers' Compensation. (T. 485-88).  Dr. Buckner concluded that "no causally related disability exists."  (T. 488).   He opined that Wilson can
(continued...)

Wilson's point of error, therefore, boils down to either an argument regarding a literal violation of the treating physician rule or an invitation for the court to re-weigh the medical evidence and come to a different conclusion. Since

---

[12](...continued)
perform all activities of daily living and light duty work. (*Id.*).

> *Dr. Amelita Balagtas, M.D. (consultative orthopedic examiner)*

On April 2008, Dr. Balagtas performed a consultative orthopedic examination. (T. 521-23). Dr. Balagtas opined that Wilson "would have moderate limitation in activities that require bending, lifting, and prolonged standing." (T. 523).

> *Dr. Craig Goldberg, M.D. (consultative neurological examiner)*

On November 8, 2008, at the request of Wilson's treating physician, Dr. Goldberg performed a consultative neurological examination. (T. 543-45). Dr. Goldberg reported no deficits in motor functioning in Wilson's lower extremities, noted normal gait, good range of motion, and ability to heel walk, toe walk, tandem walk. (*Id.*).

> *Dr. Kautilya Puri, M.D. (consultative neurological examiner)*

In January 2010, and again in April 2011, Dr. Puri opined that Wilson can lift/carry up to twenty pounds continuously and lift fifty pounds frequently, but only carry fifty pounds occasionally. (T. 567-576, 615-624). He further opined that Wilson can sit continuously during an eight-hour workday, stand for six hours in an eight-workday, and walk for three hours in an eight-hour workday. (*Id.*).

> *Dr. Suraj Malhotra, M.D. (consultative orthopedic examiner)*

In April 2011, Dr. Malhotra opined that Wilson is able to lift/carry twenty pounds frequently, but only occasionally lift fifty pounds and never carry more than twenty pounds. (T. 606-14). He also stated that Wilson can sit continuously in an eight-hour workday, but only stand and/or walk for one hour each in an eight-hour workday. (*Id.*). He further found that Wilson can reach continuously overhead and all other directions, handle, finger, and feel. (*Id.*). Dr. Malhotra opined that Wilson can frequently climb stairs and ramps, occasionally climb ladders or scaffolds, balance, and kneel, but never stoop, crouch or crawl. (*Id.*).

> *Dr. John W. Axline, M.D. (non-examining orthopedic surgeon)*

On May 11, 2011, Dr. Axline reviewed the longitudinal treatment record and completed medical interrogatories regarding Wilson's physical impairments as well as a medical source statement. (T. 661-670). Dr. Axline opined that Wilson is able to frequently lift up to fifty pounds and continuously carry up to twenty pounds. (*Id.*). He stated that Wilson can sit for eight hours in an eight-hour workday, stand for four hours in an eight-hour workday, and walk for six hours in an eight-hour workday. (*Id.*). He opined that Wilson is capable of frequent or constant manipulative or postural activities. (*Id.*).

the court is powerless to accept an invitation to re-weigh evidence, its discussion and analysis must be confined to an examination of whether ALJ Wright disregarded or violated the treating physician rule.

Close scrutiny discloses that ALJ Wright neither violated the governing regulation nor exceeded bounds of his wide discretion when declining to give controlling weight to Drs. Mills's and Shnaidman's opinions. ALJ Wright cited the applicable regulation thus indicating his awareness of and intent to follow it. (T. 15). ALJ Wright then acknowledged doctors Mills and Shnaidman as Wilson's "primary care providers." (T. 13, 18). He documented their treatment relationship and degrees of specialization (Factors 1, 2 and 5). (T. 13, 16-18). He accurately discerned that Dr. Mills's medical source statement of forensic opinion is inconsistent with his actual examination findings,[13] opinions of other medical sources,[14] and documented salutary effects of medications (Factors 3, 4 and 6). (T. 37).

On the other hand, Drs. Mohler, Buckner, Balagtas, Malhotra, and Axline (whose opinions were afforded greater weight) are specialists with respect to the orthopedic impairments under consideration, and Dr. Puri is a specialist in the

---

[13]      ALJ Wright noted that Dr. Mills's records generally show that the claimant's pain has been managed with a muscle relaxer and ibuprofen, with occasional, as needed, use of a narcotic pain reliever, but he has no history of more aggressive treatment, such as steroid injections, a TENS unit, or spinal cord stimulator. (T. 700).

[14]      ALJ Wright explained that the record does not show any type of significant neurologic or functional deficiencies in his lower extremities, gait abnormality, or other clinical evidence that would support such severe limitations. Dr. Balagtas observed a normal gait, and ability to ambulate without an assistive device. (T. 522). Dr. Goldberg reported no deficits in motor functioning in the lower extremities, noted normal gait, good range of motion, and the ability to heel walk, toe walk, and tandem walk. (T. 544). Dr. Puri observed a normal gait with no use of an assistive device. (T. 568). Drs. Mohler, Buckner, Balagtas, Puri, and Axline indicated no significant impairment in Wilson's sitting. (T. 479, 488, 523, 572, 666).

field of neurology. (Factor 5). And, of considerable import, Dr. Axline's expert opinions were formed after reviewing Wilson's complete medical records. (Factor 6).

This constitutes an adequate factor analysis in conformity with the governing regulation, and under this circumstance, ALJ Wright properly could elect to give little weight to treating source opinion while affording more weight to Drs. Mohler, Buckner, Balagtas, Puri, and Axline's opinions. Their opinions are more consistent with Wilson's medical treatment record as a whole (Factor 4), including many clinical observations in Dr. Mills's treatment notes.

Finally, state agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act. *See* 20 C.F.R. §§ 404.1526(c), 404.1527(f)(2). Accordingly, their opinions can be given weight, even greater weight than opinions of treating physicians, when, as here, they are supported by substantial evidence. *See, e.g., Netter v. Astrue*, 272 Fed. App'x 54, 55-56 (2d Cir. 2008) (summary order) (reports of consultative and/or non-examining physicians may override opinions of treating physicians, provided they are supported by substantial evidence in the record).

In sum, ALJ Wright's credibility choices regarding medical source opinions are not reversible for failure to comply with the treating physician rule, and they are supported by substantial evidence. There is no error in this respect upon which to base a remand.

B.    *Credibility of Subjective Testimony*

ALJ Wright summarized Wilson's subjective testimony as follows:

At the January 2010 hearing, the claimant testified that he is limited to sitting for fifteen minutes at a time before experiencing pain, and

requires the ability to get up and move around. He also reported that he would be able to stand in a carpeted room for a bout a half-hour, but standing and/or walking on hard surfaces is more difficult In terms of lifting and/or carrying, the claimant indicated that he is limited to ten pounds. He also indicated that he has difficulty dressing himself and bathing due to pain when bending at the waist.

\* \* \*

The claimant then testified at a hearing held on February 29, 2012, at which time he reported that he is limited in his exposure to fumes due to shortness of breath, headaches, and nausea. He characterized his pain as constant, with exacerbations occurring when he walks, stands, bends, or sits for prolonged periods. I note that the claimant presented to the February 2012 hearing with a cane, and reported that he sometimes "collapses" from back pain when he overdoes things.

(T. 15). ALJ Wright then made this credibility assessment:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the record of medical evidence.

(*Id*.).

Wilson maintains that ALJ Wright failed to provide good reasons for discrediting his testimony, and that the case should be remanded for proper evaluation. (Dkt. No. 10, p. 10). Specifically, Wilson argues that ALJ Wright erroneously relied on observations of Drs. Mohler and Axline to find that Wilson exaggerated his symptoms. (*Id*., p. 8). Wilson further contends that ALJ Wright mischaracterized Wilson's activities of daily living. (*Id*., at pp. 8-9). Finally, Wilson asserts that ALJ Wright erred when he reasoned that Wilson's subjective complaints are inconsistent with conservative treatment. (*Id*., p. 10).

1.    <u>Governing Legal Principles</u>

Testimony from claimants regarding persistence, intensity and limiting effects of symptoms is not only relevant, but desirable.  On the other hand, it is subjective and may be colored by interest in obtaining a favorable outcome.  An administrative law judge must, therefore, engage in a difficult task of deciding how much weight to give claimants' subjective self-evaluations.

a.    *Commissioner's Protocol*

The Commissioner provides explicit guidance.  First, a formally promulgated regulation requires consideration of seven objective factors that naturally support or impugn subjective testimony of disabling pain and other symptoms.[15]  Second, an interpretive ruling directs administrative law judges to follow a two-step process to evaluate claimants' allegations of pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

---

[15]    An administrative law judge must evaluate a claimant's symptoms, including pain, based on  medical and other evidence, including the following factors:

(i)    claimant's daily activities;
(ii)   location, duration frequency, and intensity of claimant's pain or other symptoms;
(iii)  precipitating and aggravating factors;
(iv)   type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v)    treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi)   measures claimant uses or has used to relieve pain or other symptoms; and
(vii)  other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c).

Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

SSR 96–7p, TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996). The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Governing circuit law generally mirrors the Commissioner's ruling. Thus, when an administrative law judge rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).[16]

> b. *Judicial Review of Subjective Credibility Determinations*

Absent flagrant disregard of governing law, nothing in social security jurisprudence is more firmly established than that it is the prerogative of the Commissioner, not reviewing courts, to resolve evidentiary conflicts and to appraise credibility of witnesses, including the claimant. *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Consequently, reviewing courts are loathe to second-guess and overturn credibility choices made by an administrative adjudicator. *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997)

---

[16] When an administrative law judge neglects to employ proper legal standard, a court cannot subject his credibility determination to meaningful review. *See Meadors v. Astrue*, 370 Fed. App'x 179, 184-85 (2d Cir. 2010).

("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.' "); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness.").

2.    Application

Wilson's brief to the court cites the governing regulation mentioned above, but does not argue that ALJ Wright violated it in any specific manner.[17] (Dkt. No. 10, pp.7-8). Consequently, Wilson's point essentially argues that ALJ Wright's subjective credibility determinations are patently unreasonable.

This, again, comes perilously close to a futile invitation to the court to re-weigh Wilson's testimony, but Wilson does, indeed, point to some examples cited by ALJ Wright that another administrative adjudicator, or even a member of the judiciary (were judges permitted to make *de novo* credibility assessments) might well have considered as insignificant and insufficient to impugn Wilson's subjective testimony.[18] Assuming *arguendo* that reliance thereon was patently unreasonable, it is of little consequence because ALJ Wright cited numerous

---

[17]    Independent inquiry does not disclose that ALJ Wright failed to apply correct principles of law. ALJ Wright acknowledged all regulations and rulings that govern consideration of subjective evidence, and he expressly referenced the two-step process for considering subjective symptoms. (T. 15). He then considered objective factors identified in the regulation to the extent there was evidence thereof, engaged in the two-step process as required by the applicable ruling, and articulated specific reasons, all as required by circuit law.

[18]    ALJ Wright discredited Wilson's subjective testimony in part because he found that Wilson engages in a wide range of normal daily activities that require more exertional capacity than Wilson claims to have. (T. 16). ALJ Wright may have taken some of those activities out of context. He found that Wilson is able to cook, but Wilson's testimony only indicates that he prepares a bowl of cereal. (T. 34). Similarly, Wilson does pick things up from the store, but does not do grocery shopping. (T. 35). In 2009, Wilson mentioned to his doctor that he was going camping (T. 652), but Wilson testified in 2012 that he "used to like fishing and camping . . . but hasn't been able to do that." (T. 37).

other reasons, all supported by substantial evidence, for finding Wilson's subjective testimony not fully credible. These included symptom exaggerations documented by physicians,[19] use of primarily over-the-counter medications, no recent professional pain-management intervention,[20] problematic subjective responses to objective diagnostic tests,[21] and inconsistent testimony.[22]

ALJ Wright's credibility choices were reached and explained sufficiently, and are not reversible for failure to apply correct principles of law or for lack of substantial evidence.

## C.    Obesity

ALJ Wright's decision acknowledges that "[i]n its remand order, the Appeals Council directed the undersigned to appropriately consider the claimant's obesity in accordance with SSR 02-1p . . .." Wilson argues that ALJ Wright failed to comply with this directive. (Dkt. No. 10, pp. 10-11). Specifically, Wilson complains that ALJ Wright determined Wilson's obesity to be a severe impairment, but failed to discuss how obesity limits his functionality either alone or in conjuncture with his other impairment. (*Id.*, p. 11).

---

[19]     Dr. Mohler opined that Wilson "exhibits exaggerated responses, symptom magnification, and a positive Waddell's sign with his response to injury out of proportion to the mechanism of what caused the alleged injury." (T. 479, 481). In review of the entire record, Dr. Axline also notes that observations of Drs. Balagtas, Malhotra, and Puri, are consistent with symptom exaggeration or malingering. (T. 663, *citing* T. 522, 607-08, and 569).

[20]     (T. 16).

[21]     The seated and the supine straight leg results should be the same, but Dr. Mohler observed that Wilson reported "positive Waddell's signs for straight leg raising in the seated position versus supine." (T. 481).

[22]     Wilson stated in his initial Disability Report that he stopped performing light duty work because the work was no longer available to him as of November 15, 2006, not because he was no longer able to perform that work. (T. 346).

Wilson correctly points out that ALJ Wright did not *discuss* how obesity affects his functionality. ALJ Wright only *mentions* obesity in terse, unelaborated language in four instances: (i) at the outset of his decision when describing earlier Appeals Council action (T. 11); (ii) at Step 2 of sequential evaluation when finding obesity to be a severe impairment (T. 13); (iii) at Step 3 when finding that Wilson's lumbar spine impairments do not satisfy presumptive disability requirements of "listing 1.04" (T. 14);[23] and (iv) prior to Step 4 when expressing his residual functional capacity assessment (T. 19).

1.    Governing Legal Principles

Obesity in and of itself is not a disability within the meaning of the Social Security Act; but an administrative law judge should consider whether obesity, in combination with other impairments, prevents a claimant from working. *See* SSR 02-1p: TITLES II AND XVI: EVALUATION OF OBESITY, 67 Fed. Reg. 57,859, 57,860 (Sept. 12, 2002), *see also Dutcher v. Colvin*, No. 1:12–cv–1662 (GLS), 2014 WL 295776, at *6 (N.D.N.Y. Jan. 27, 2014) ("while obesity is not in and of itself a disability, it is a medically determinable impairment under the regulations, which the ALJ should consider when assessing an individual's RFC"). The Commissioner's interpretive ruling instructs that obesity should be evaluated at various stages of the sequential evaluation process.[24] When evaluating obesity

---

[23]    The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  Listed impairments are presumptively disabling.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

[24]    Pursuant to SSR 02-1p, obesity is considered in determining whether:

- The individual has a medically determinable impairment.
- The individual's impairment(s) is severe.
- The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings.
- The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy.

SSR 02-1p, 67 Fed. Reg. at 57,861.

in assessing residual functional capacity, the ruling notes that obesity can cause functional limitation, and that the functions likely to be limited depend on many factors, including where excess weight is carried, whether it causes sleep apnea/fatigue, whether it impacts social functioning, and any potential problems with ability to sustain work activity.[25]

## 2. Application

Given that the Appeals Council remanded Wilson's application for specific consideration of obesity, one would expect that ALJ Wright would have delved into this issue explicitly and in detail. His decision, however, does not even list Wilson's weight.[26] He does not articulate any rationale for finding Wilson's obesity to be a severe impairment. His only references to Wilson's obesity in an analytical sense are conclusory statements that he took Wilson's obesity into consideration as directed or required under SSR 02-1p. (T. 14,19). He does not elaborate in any respect as to how obesity affects Wilson's functionality.

Although these omissions are astonishing given the circumstances, they do not constitute reversible error. The fact that an item of evidence is not *discussed* does not necessarily mean it was not *considered*.[27] Circuit law does not require administrative law judges to single out obesity for discussion in all cases.[28] Further, circuit law recognizes that "[w]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the

---

[25]     *See* SSR 02-1p, 67 Fed. Reg. at 57,862-57,863.

[26]     Wilson's initial Disability Report listed his height and weight as 5'7" and 280 pounds.  (T. 345).

[27]     *See Brault v. Social Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012) ("[a]n ALJ does not have to state on the record every reason justifying a decision," nor is an ALJ "required to discuss every piece of evidence submitted.") (internal quotations and citation omitted); *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").

[28]     *See Cruz v. Barnhart,* No. 04 CIV 9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006); *Mancuso v. Astrue,* No. 1:06-CV-930 (GLS), 2008 WL 656679, at *5-6 (N.D.N.Y. Mar. 6, 2008), *aff'd,* 361 Fed. App'x 176, 178 (2d Cir. 2010).

[claimant], the claimant's obesity is understood to have been factored into their decisions."[29]

ALJ Wright evaluated Wilson's obesity and found it to be a severe impairment at Step 2. (T. 13). He considered it again at Step 3 and a third time when determining Wilson's residual functional capacity. (T. 14, 18). ALJ Wright is deemed to have considered Wilson's obesity adequately when he evaluated residual functional capacity by giving great weight to medical opinions of examining physicians who considered Wilson's obesity in formulating their opinions.[30] Finally, Wilson fails to identify any particular limitation(s) on his ability to work allegedly caused either by his obesity, alone or in combination with his other impairments.

Accordingly, there is no discernible error in ALJ Wright's consideration of Wilson's obesity.

C.    *Assistive Device*

Wilson appeared at his February 2012 evidentiary hearing using a cane. (T. 44). He testified that he uses it as a safety measure when he will be required to move more than usual and exert himself. (*Id.*). He acknowledged that it is

---

[29]    *Yablonski v. Commissioner of Soc. Sec.*, Civ. No. 6:03-CV-414 (FJS/RFT), 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (internal quotations and citations omitted); *see, e .g., Drake v. Astrue*, 443 Fed. App'x 653, 657 (2d Cir. 2011) (summary order) (the administrative law judge implicitly factored plaintiff's obesity into his residual functional capacity determination by relying on medical reports that repeatedly noted plaintiff's obesity and provided an overall assessment of her work-related limitations); *Paulino v. Astrue*, 08 Civ. 02813, 2010 WL 3001752, at *18-19 (S.D.N.Y. July 30, 2010) (although the administrative law judge failed to mention plaintiff's obesity when conducting step-three listing analysis, he satisfactorily considered the effects of plaintiff's obesity by relying on evaluations by doctors who accounted for the claimant's obesity) (collecting cases).

[30]    ALJ Wright gave great weight to the medical opinions of Dr. Puri, who noted Wilson was obese (T. 568), Dr. Buckner, who diagnosed morbid obesity and in no acute distress (T. 487-88), Dr. Mohler, who observed Wilson as moderately overweight (T. 481), and Dr. Balagtas, who reported Wilson's weight at 290 pounds with shoes (T. 521).

not medically prescribed, but alleges his doctor told him "it's a good idea." (*Id.*). Wilson further acknowledged that he does not use it that often because he does not do anything at the house. (T. 45).

ALJ Wright recognized that Wilson appeared at the administrative hearing with a cane, but he did not factor use of a cane into his residual functional capacity assessment. No limitation was imposed because "the record does not show that a cane is medically necessary." (T. 16).

Wilson argues that ALJ Wright erred by failing to properly consider the impact of Wilson's need and use of a cane when determining residual functional capacity. (Docket No. 10, pp. 11-12). Wilson cites SSR 96-9p,[31] as providing "guidance on how to evaluate the effects of a hand-held assistive device, such as a cane, on a claimant's RFC." (*Id.*). Wilson maintains that "there is medical evidence that a cane is necessary, at least on one occasion, for safety and to alleviate discomfort." (*Id.*, p. 12).

1.    Governing Principles

The Commissioner's interpretive ruling cited by Wilson requires consideration of whether a claimant uses a "medically required" hand-held assistive device. *See* SSR 96-9p, 1996 WL 374185, at *7.[32] To qualify as "medically required," there must be "medical documentation establishing the

---

[31]     *See* SSR 96-9p, TITLES II AND XVI:  DETERMINING CAPABILITY TO DO OTHER WORK –IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN SEDENTARY WORK, 1996 WL 374185, at *1 (SSA July 2, 1996).

[32]     Literally, this ruling addresses instances where claimants have residual functional capacity for less than sedentary work. *See* SSR 96-9p, 1996 WL 374185, at *1. Wilson's residual functional capacity is for light work. But, since a finding of residual functional capacity for sedentary work is subsumed in a finding of residual functional capacity for light work, the Commissioner does not contest relevance of the ruling in Wilson's case.

need for a hand-held device" and that documentation must "describe[e] the circumstances for which it is needed. . . ." *Id.*

The burden to establish such medical necessity rests with a claimant. *See Howze v. Barnhart*, 53 Fed. App'x 218, 222 (3d Cir. 2002).[33] When a claimant meets that burden, SSR 96-9p instructs adjudicators to consider first *why* the device is necessary. It then provides various examples of *how* need for such device may or may not erode a claimant's unskilled sedentary occupational base.[34]

---

[33] Precise documentation that a claimant must provide is not yet well-established in case law, but jurisprudence from within and outside this circuit indicate that proof must unambiguously match all of the SSR 96-9p's detailed criteria. *See Tripp v. Astrue*, 489 Fed. App'x 951, 955 (7th Cir. 2012); *Spaulding v. Astrue*, 379 Fed. App'x 776, 780 (10th Cir. 2010); *Howze v. Barnhart*, 53 Fed. App'x 218, 222 (3d Cir. 2002); *see also Perez v. Astrue*, 907 F. Supp.2d 266, 274 (N.D.N.Y. 2012); *Miller v. Astrue*, 538 F. Supp.2d 641, 651 n.4 (S.D.N.Y. 2008) (quoting SSR 96-9p).

[34] The ruling provides:

For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded. Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (*e.g.*, an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (*e.g.*, because of a neurological impairment) may be significantly eroded.

*See* SSR 96-9p, 1996 WL 374185, at *7 (internal footnotes omitted).

2. <u>Application</u>

Wilson concedes that he was not given a prescription for a cane. (T. 44). He points, however, to one instance in 2006 when Dr. Shnaidman checked a box indicating that Wilson used a cane or other device for assistance while standing or walking. (T. 679). Next, Wilson relies on his own subjective testimony, asserting he uses a cane for safety when he is required to move more than usual and exert himself. (T. 44).

This evidence, while relevant, falls short of establishing that a hand-held assistive device is medically required. First, even Dr. Shnaidman volunteered that Wilson's use of a cane was "not all the time." (T. 679). More importantly, the clear weight of other medical evidence points the other direction. Examining physicians, Drs. Balagtas, Puri, and Malhotra, all observed Wilson had a normal gait and ambulated without an assistive device. (T. 522, 568, 607, 616). Even Wilson's other treating physician, Dr. Mills, noted that Wilson did not require use of a cane to ambulate. (T. 655). Nonexamining physician, Dr. Axline, echoed this finding. (T. 666).

Given this evidence Wilson does not demonstrate error under SSR 96-9p.

## VI. Recommendation

The Commissioner's decision should be AFFIRMED, and Wilson's request to remand this action should be DENIED.

## VII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the _11_ day of _____June_____ 2014.

Earl S. Hines
United States Magistrate Judge